USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC# _____
DATE FILED: 9/29/11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
KATHLEEN RUTHERFORD,

                 Plaintiff,

-against-

KATONAH-LEWISBORO SCHOOL
DISTRICT,

                 Defendant.
------------------------------------------------------X

**MEMORANDUM DECISION AND ORDER**

08 Civ. 10486 (GAY)

Plaintiff Kathleen Rutherford, a public school teacher, commenced this action pursuant to 42 U.S.C. § 1983 against defendants Katonah-Lewisboro School District (the "District"), Superintendent of Schools Dr. Robert Roelle and Deputy Superintendent of Schools Dr. Karen Benedict, wherein plaintiff alleges that defendants violated her constitutional rights during the course of suspending, investigating and transferring her in the summer of 2008. Specifically, she claims that defendants (1) violated her Fourteenth Amendment right to substantive due process, (2) violated her Fourteenth Amendment right to privacy by disclosing personal information and (3) directed her not to communicate with any other District employees–including fellow union members –during the course of her suspension, in violation of her First Amendment right to free association. Defendants filed a motion for judgment on the pleadings; by Decision and Order dated November 3, 2009, Judge McMahon granted the motion in part and dismissed all claims against the individual defendants and the Fourteenth Amendment claims against the District. See Rutherford v. Katonah-Lewisboro School District, 670 F. Supp.2d 230 (S.D.N.Y. 2009) ("Rutherford I"). The parties thereafter consented to the

undersigned for all purposes pursuant to 28 U.S.C. §636(c). Presently before this Court is the District's motion for summary judgment on the remaining First Amendment claim, pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons that follow, defendant's motion is denied.

## I. STANDARD OF REVIEW

Summary judgment is appropriate only where there are no genuine issues of material fact in dispute, and the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Bryant v. Mafucci, 923 F.2d 979, 982 (2d Cir. 1991). A fact is material when its resolution would "affect the outcome of the suit under the governing law" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party and must draw all permissible inferences in favor of that party from the submitted affidavits, exhibits, interrogatory answers, and depositions. See Anderson, 477 U.S. at 255; Vann v. City of New York, 72 F.3d 1040, 1048-49 (2d Cir. 1995). "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir. 2005). However, "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007).

## II. FIRST AMENDMENT RIGHTS OF PUBLIC EMPLOYEES

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the reedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." Although not explicitly stated, the right to freely associate is also protected by the First Amendment. See, e.g., Brotherhood of R.R. Trainmen v. Virginia, 377 U.S. 1, 5 (1964); Cobb v. Pozzi, 363 F.3d 89, 101 (2d Cir. 2004).

While public employees "do not check all of their First Amendment rights at the door," Jackler v. Byrne, No. 10-0859, 2011 WL 2937279, at *6 (2d Cir. July 22, 2011), upon entering public employment, they "by necessity must accept certain limitations upon [their] freedom." See Garcetti v. Ceballos, 547 U.S. 410, 418 (2006). "Government employers, like private employers, need a significant degree of control over their employees' words and action . . . [so as not to] contravene governmental policies or impair the proper performance of governmental functions." Id. at 418-419.

Courts evaluate First Amendment *speech* claims brought by government employees pursuant to the two-part test established by the Supreme Court in Pickering v. Board of Ed., 391 U.S. 563 (1968) and Connick v. Myers, 461 U.S. 138 (1983). Whether the government has permissibly regulated the speech of its employees is determined by balancing the interest of the employee, "as a citizen in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it provides through its employees." Pickering, 391 U.S. at 568. In Connick, the Supreme Court held that where the employee speech does not

3

touch upon a matter of public concern, no balancing of interests need occur, as the speech is not protected. See 461 U.S. at 146. In other words, for a public employee to show that her free speech rights have been violated, as a threshold matter she must show that her speech touched upon a matter of public concern.

As Judge McMahon pointed out in Rutherford I, "[t]he Supreme Court has never definitively decided whether the same rule applies in the exercise of First Amendment associational rights by a public employee." See Rutherford, 670 F. Supp.2d at 243-44. The Second Circuit, however, has held that a public employee claiming *retaliation* because of her exercise of free association rights must show that her "associational activity touches on matters of public concern." See Cobb, 363 F.3d at 101-03. Judge McMahon acknowledged the Cobb decision in Rutherford I, then noted the well-established rule "that a public employee who brings a First Amendment claim alleging a prior restraint on her freedom of *speech* must show that the speech touches on a matter of public concern." See Rutherford, 670 F. Supp.2d at 244 (emphasis in original). Judge McMahon continued:

> Given that . . . the public concern requirement applies to free speech *prior restraint* cases just as it does to free speech retaliation cases, there is no reason to think that the Second Circuit would reason or conclude any differently if presented with the question of whether the public concern requirement applies to a non-retaliation associational claim. I therefore hold that in order to state a viable First Amendment free association claim, Plaintiff must allege that the associational activity at issue touches upon a matter of public concern.

Id. at 246 (emphasis in original).

### III. PLAINTIFF'S FIRST AMENDMENT FREE ASSOCIATION CLAIM

At a June 10, 2008 meeting with District representatives, four days after the

4

incident which gave rise to this action, plaintiff was given a letter. The letter administratively assigned plaintiff to her home pending investigation of the events at issue and barred her from entering upon any district property without express permission. In addition, the letter directed plaintiff to "have no further communication with any District employee[, including] . . . any verbal, written or electronic communication whatsoever" (the "Gag Order"). Plaintiff contends that because the Gag Order, by its terms, included the many members of her union that were also District employees, she was denied the ability to associate with her local union representative and other union members in violation of her First Amendment right. Defendant argues that plaintiff's claim fails as a matter of law because plaintiff's association with her union does not touch on a matter of public concern.

As defendant points out, Judge McMahon indeed held in Rutherford I that there is "no question in this case that the associational *conduct* Plaintiff was allegedly barred from engaging in is quintessentially personal, not public, in nature." See id. at 248 (emphasis added). However, Judge McMahon also recognized that Cobb "dodged the question of whether union membership and its correlative benefits, in and of themselves, touched on a matter of public concern." See id. at 249 (citing Cobb, 363 F.3d at 107-08). Hence, Judge McMahon "postponed for another day" the very issue that plaintiff raises in opposition to the instant motion: whether union association, in and of itself, touches on a matter of public concern.

"Union organizing is clearly the type of associational activity directed at political and social changes that government censorship might chill." See Maglietti v. Nicholson, 517 F. Supp.2d 624, 635 (D. Conn. 2007). In Scott v. Goodman, 961 F. Supp. 424

5

(E.D.N.Y. 1997), the district court cited policy reasons in support of its conclusion that a New York City Transit Authority worker's union membership, in and of itself, satisfied the public concern requirement:

> The core purpose of a labor union is to address, criticize, and attempt to improve the way an employer operates both in general and in relation to its employees. The role of a union is particularly important where, as here, the employer is a governmental entity. It is hornbook law . . . that speech about the manner in which government is operated or should be operated is an essential part of the communications necessary for self-governance the protection of which was a central purpose of the First Amendment. Thus, the state may not abridge the right of public employees to associate in a labor union and to seek redress of grievances through collective action. Consequently, under the *Pickering/Connick* analysis, union activity *in toto* is certainly broader than matters only of personal interest.

See Scott, 961 F. Supp. 424 at 435 (internal quotations and citations omitted). For similar reasons, I conclude that plaintiff's association with her union, in and of itself, satisfies the public concern requirement. It is fairly obvious that the vast majority of communities consider education to be of primary importance. For a wide variety of reasons, many citizens are keenly interested in the structure, function and administration of their local school districts and the individual schools therein. A teachers' union is an instrumental conduit between the public and the inner workings of the school district. I note that at least one other district court in this circuit has also held that "union membership, in and of itself, is enough to satisfy the public concern requirement." See Donovan v. Incorporated Village of Malverne, 547 F. Supp.2d 210, 218 (E.D.N.Y. 2008). Although I am unwilling to conclude that association with *any* union, in and of itself, touches on a matter of public concern, because of the nature of the union here I come to the narrower conclusion that plaintiff's association with her

6

local union, in and of itself, touches on a matter of public concern.

Defendant argues, in the alternative, that plaintiff's claim must be dismissed based upon the *Pickering* balance, *to wit*, "the District's interests outweighed the plaintiff's interest in speaking to other district employees, some of who [sic] may have been union officials." See Memorandum of Law in Support of Motion for Summary Judgment, at 9. Assuming, without deciding, that the *Pickering* balance applies, defendant's contention is unpersuasive.

The bar on plaintiff's communication with any District employee began on June 10, 2008–just days before the end of the school year–and was in force until August 22, 2008. Defendant argues that the prohibition on communicating with any District employees, including plaintiff's local union members, was necessary because "the District [did] not want anything to contaminate the investigation . . . [or] have anything disrupt the educational process" and "felt it had a responsibility to maintain order in the school and it would be in the best interests of the children." See id. However, defendant proffers no evidence to explain how prohibiting plaintiff from communicating with District employees over the summer–when school is not in session–served to maintain order in the school, ensure the integrity of the educational process or protect the interests of the children. In addition, this Court agrees with the Tenth Circuit's observation in Shrum v. City of Coweta, Oklahoma:

> Where a public employer has negotiated with an employee union and signed a collective-bargaining agreement, it has contractually agreed to the legitimacy of the union and of its employees' association with the union. The public employer has presumably received the benefit of its bargain, and is estopped from claiming that its interest as an employer are inconsistent with the freedom of its employees to associate with the union or to file grievances in accordance with its procedures.

7

449 F.3d 1132, 1139 (10th Cir. 2006). This Court agrees that allowing a public employer, who has collectively bargained with a union, to prohibit a union member from associating with the union would unfairly undercut the strength and purpose of the union. The concern is heightened in the instant case, where plaintiff served as her union's building representative and, therefore, was prohibited from associating with union members who may have required her assistance on issues totally unrelated to plaintiff's situation. In sum, the District's interests do not outweigh plaintiff's right to freely associate with her union or its membership.

## IV. CONCLUSION

For all of the foregoing reasons, defendant's motion for summary judgment is **DENIED**.

The Clerk of the Court is respectfully requested to terminate the pending motion (Docket #24).

**The parties shall appear for a pretrial conference on October 20, 2011 at 9:30 a.m. in Courtroom 421.**

Dated: September 29, 2011
White Plains, New York

SO ORDERED:

_____
GEORGE A. YANTHIS, U.S.M.J.